UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JENNIFER OUDERKIRK,

                          Plaintiff,

v.                                                                                              3:21-CV-1048
                                                                                                   (GTS/ML)
RESCUE MISSION ALLIANCE OF
SYRACUSE, doing business as Thrifty
Shopper; JESSICA ARNOLD, Store
Manager; TRINITY MONOHAN,
Assistant Store Manager; and TAMMY
LARRY, Regional Manager,

                          Defendants.
_____

APPEARANCES:                                                                OF COUNSEL:

JENNIFER OUDERKIRK
  Plaintiff, *Pro Se*
83 Van Kirk Road, Apt. 1
Newfield, New York 14867


MIROSLAV LOVRIC, United States Magistrate Judge

### ORDER and REPORT-RECOMMENDATION

      The Clerk has sent this *pro se* complaint together with an application to proceed *in forma pauperis* filed by Jennifer Ouderkirk ("Plaintiff") to the Court for review. (Dkt. Nos. 1 and 2.) For the reasons discussed below, I grant Plaintiff's *in forma pauperis* application (Dkt. No. 2) and recommend that Plaintiff's Complaint (Dkt. No. 1) be (1) accepted in part for filing, and (2) dismissed in part with leave to amend.

I.   BACKGROUND

Construed as liberally[1] as possible, Plaintiff's Complaint alleges that her civil rights were violated by Defendants Rescue Mission Alliance of Syracuse, Jessica Arnold, Trinity Monohan,[2] and Tammy Larry (collectively "Defendants").  (*See generally* Dkt. No. 1.)

More specifically, the Complaint alleges that Plaintiff was employed by Defendant Rescue Mission from July 20, 2020, until September 11, 2020, at the Thrifty Shopper, in Ithaca, New York.  (*Id.*)  Plaintiff alleges that she was discriminated against and harassed based on her gender identity and expression.  (*Id.*)  Plaintiff alleges that Defendant Rescue Mission's dress policy targeted women with "bigoted and offensive language" using terms like "sexually provocative" and "sexually suggestive," which do not relate to job performance and serve no legitimate business purpose.  (*Id.* at 6.)  Plaintiff alleges that on July 27, 2020, Defendant Arnold gave her a negative performance review based on her appearance, referring to her dress as "mini-tight" and "inappropriate" when Plaintiff's dress was "long and feminine."  (*Id.*)  Plaintiff alleges that in July 2020, a co-worker told her "she should have been a blonde," suggesting that Plaintiff was "stupid."  (*Id.* at 7.)  Plaintiff alleges that in July and August 2020, employees and management referred to her as "Glam Girl" with "provoking stares."  (*Id.*)  Plaintiff alleges that Defendant Monohan mocked Plaintiff's high-pitched voice.  (*Id.*)

---

[1]   The court must interpret *pro se* complaints to raise the strongest arguments they suggest.  *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

[2]   The Court notes that Defendant Monohan was referred to at various points in the body of the Complaint as Defendant "Monahan."  It is unclear to the Court which spelling of Defendant Monohan's last name is correct.  However, for purposes of consistency, the Court will refer to her as Defendant Monohan in this Order and Report-Recommendation.

Plaintiff alleges that on July 29, 2020, Defendant Monohan ridiculed Plaintiff in front of several customers and when Plaintiff reported this to her supervisor, no effort was made to address the inappropriate conduct. (*Id*. at 7.) Plaintiff alleges that Defendants Arnold and Monohan "continuously" provided false and misleading information that was relevant to Plaintiff's job duties and interfered with her work performance. (*Id*.) Plaintiff alleges that Defendant Monohan (a) "undermin[ed] and sabotage[ed]" Plaintiff's work, (b) circulated defamatory statements, (c) scrutinized and criticized Plaintiff's work, and (d) made negative and malicious comments to Plaintiff's supervisors. (*Id*.) Plaintiff alleges that in August 2020, Defendant Arnold began subjecting Plaintiff to intensive and humiliating public scrutiny. (*Id*. at 8.) Plaintiff alleges that on August 11, 2020, Defendant Arnold publicly scrutinized Plaintiff's purchases to intimidate and humiliate her. (*Id*.)

Plaintiff alleges that she was falsely accused of stealing. (*Id*. at 7.) Plaintiff alleges that Defendant Arnold "aggressively" stated to Plaintiff "we don't f**k around with our money." (*Id*. [asterisks in original].) Plaintiff alleges that in July and August 2020, Defendant Monohan told Plaintiff's customers, supervisor, and co-workers that she was stealing. (*Id*.) Plaintiff alleges that on August 31, 2020, Defendant Arnold accused Plaintiff of stealing two boxes of store jewelry after a customer saw the property in Defendant Arnold's vehicle. (*Id*. at 10.) Plaintiff alleges that throughout August 2020, Defendants Arnold, Monahan, and Larry slandered Plaintiff to customers and co-workers by falsely accusing her of stealing. (*Id*.)

Plaintiff alleges that on August 10, 2020, she engaged in protected speech when she contacted Dali Guantes in Human Resources to report the harassment and discrimination based on her gender identity and expression. (*Id*. at 8.) Plaintiff alleges that on August 15, 2020, she

sent a message to Defendants Arnold and Monohan stating that the discriminatory harassment was unwelcome and must stop.  (*Id*. at 9.)

Plaintiff alleges that in retaliation for her protected speech complaining about the discrimination, Defendant Arnold (1) on August 19, 2020, took Plaintiff's arm brace that she wore for a physical disability and "subjected [Plaintiff] to several weeks of physical pain," (2) ordered Plaintiff to the "back of the line" as Plaintiff was preparing to pay for her items, (3) in August 2020 withheld information from Plaintiff and encouraged her to apply for a promoted position, (4) on August 23, 2020, removed Plaintiff's work equipment, while replacing all the other employees' work equipment, (5) isolated Plaintiff from her co-workers, and (6) on several occasions attempted to "furtively remove [Plaintiff]'s personal property."  (*Id*. at 9-10.)  Plaintiff alleges that in further retaliation for her complaints, on August 31, 2021,[3] Defendants Arnold, Monohan, and Larry conspired to file a false police report against Plaintiff alleging that she stole from the store on August 24, 2020, and August 26, 2020.  (*Id*. at 10.)  Plaintiff alleges that she was constructively discharged on August 31, 2020.  (*Id*.)  Plaintiff alleges that there was a causal connection between her complaints and the "materially adverse actions taken against [her] by [Defendant] Rescue Mission."  (*Id*.)  Plaintiff alleges that on September 11, 2020, she was officially discharged.  (*Id*.)

Plaintiff alleges that on September 30, 2020, she was charged with petit larceny based on the reports of Defendants Arnold, Monohan, and Larry.  (*Id*. at 11.)  Plaintiff alleges that "immediately" the charges were dismissed and sealed on February 3, 2021.  (*Id*.)  Plaintiff

---

[3]     It is unclear if Plaintiff intended for this date to be August 31, 2020.  However, the Complaint alleges that it occurred on August 31, 2021.  (Dkt. No. 1 at ¶ 24.)

alleges that on June 10, 2021, a warrant was issued for her arrest on the dismissed charge because the court failed to process her on the charge. (*Id*.)

Based upon the foregoing allegations, the Complaint appears to assert the following five claims: (1) a claim of discrimination pursuant to the Americans with Disabilities Act ("ADA") against Defendants; (2) a claim of retaliation pursuant to the ADA against Defendants; (3) a claim of retaliation pursuant to Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a) against Defendant Rescue Mission; (4) a claim of discrimination pursuant to the Fourth and Fifth Amendments of the U.S. Constitution and 42 U.S.C. § 1983 against Defendants; and (5) a claim of retaliation pursuant to the Fourth and Fifth Amendments of the U.S. Constitution and 42 U.S.C. § 1983 against Defendants. (*See generally* Dkt. No. 1.)

Plaintiff also filed an application for leave to proceed *in forma pauperis*. (Dkt. No. 2.)

## II.   PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $402, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1).[4] After reviewing Plaintiff's *in*

---

[4]   The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

*forma pauperis* application (Dkt. No. 2),[5] the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed *in forma pauperis* is granted.[6]

### III.   LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

---

[5]   The Court notes that Plaintiff's IFP application states that she does not receive any income from disability or worker's compensation payments. (Dkt. No. 2 at ¶ 3(d).) However, Plaintiff states that her rent is paid through a disability subsidy. (Dkt. No. 2 at ¶ 6.)

[6]   Plaintiff is reminded that, although the application to proceed *in forma pauperis* has been granted, she will still be required to pay fees that she may incur in this action, including copying and/or witness fees.

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity . . . occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory . . . or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he

decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that her claims pursuant to (1) Title VII be accepted for filing, and (2) the ADA and 42 U.S.C. § 1983 be dismissed.

### A. Plaintiff's Claims Pursuant to the ADA

Plaintiff asserts claims of discrimination and retaliation pursuant to Title I of the ADA, which is subject to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Saborit v. Harlem Hosp. Ctr. Auxiliary, Inc.*, 19-CV-4686, 2021 WL 2709411, at *16 (S.D.N.Y. July 1, 2021) (applying the *McDonnell Douglas* framework to Title I of the ADA).

#### 1. Discrimination

Section 12112 of the ADA provides:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).

Under the ADA, a disability is "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an

impairment; or (C) being regarded as having such an impairment." *EEOC v. J.B. Hunt Transp., Inc.*, 321 F.3d 69, 74 (2d Cir. 2003) (quoting 42 U.S.C. § 12102(2)).

An impairment need not be permanent or chronic to qualify as a "disability" under the ADA. *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 93 (2d Cir. 2021) ("[U]nder the expanded definition of 'disability' under the [2008 ADA Amendments Act], which now covers impairments lasting or expected to last less than six months, a short-term injury *can* qualify as an actionable disability under the ADA.") (emphasis in original) (cleaned up).

The 2008 ADA Amendments Act (ADAAA) "ma[d]e clear that the clear that the substantial-limitation requirement in the definition of 'disability' is not an exacting one," *Hamilton*, 3 F.4th at 92 (cleaned up); *see* 29 C.F.R. § 1630.2(j)(1)(i), and "should not demand extensive analysis," 29 C.F.R. § 1630.2(j)(1)(iii); *see Brtalik v. S. Huntington Union Free Sch. Dist.*, 10-CV-0010, 2012 WL 748748, at *4 (E.D.N.Y. Mar. 8, 2012).

> An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of this section.

29 C.F.R. § 1630.2(j)(1)(ii); *see Parada v. Banco Indus. De Venez., C.A.*, 753 F.3d 62, 69 (2d Cir. 2014). This inquiry "usually will not require scientific, medical, or statistical analysis," although such evidence is of course not prohibited, 29 C.F.R. § 1630.2(j)(1)(v); *Clark v. Stop & Shop Supermarket Co.*, 15-CV-0304, 2016 WL 4408983, at *4 (D. Conn. Aug. 16, 2016), and is made "without regard to the ameliorative effects of mitigating measures," 42 U.S.C. 12102(4)(E); 29 C.F.R. § 1630.2(j)(1)(vi). In determining whether an individual is disabled under the ADA, the Second Circuit has "rejected bright-line tests" and instructed courts to

engage in a "fact-specific inquiry." *Parada*, 753 F.3d at 69.  Appropriate considerations include "the difficulty, effort, or time required to perform a major life activity; pain experienced when performing a major life activity; the length of time a major life activity can be performed; and/or the way an impairment affects the operation of a major bodily function."  29 C.F.R. § 1630.2(j)(4)(ii).

The ADA also provides that "major life activities include, but are not limited to . . . lifting" as well as "the operation of major bodily functions, including . . . bowel [and] bladder functions."  42 U.S.C. § 12102(2).  "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."  42 U.S.C. § 12102(3)(A).

The Complaint alleges that on August 19, 2020, Defendant Arnold took Plaintiff's arm brace that she "wore for a disability and subjected her to several weeks of physical pain."  (Dkt. No. 1 at ¶ 21(a).)  This appears to be the only allegation in the Complaint regarding Plaintiff's disability or the actions taken by Defendants related to Plaintiff's disability.  The Complaint fails to allege facts plausibly suggesting that Plaintiff is disabled within the meaning of the ADA or that that Plaintiff was discriminated in any way as a result of a disability.  Plaintiff does not allege (1) any impairment that limited a major life activity, (2) a record of an impairment, or (3) being regarded as having an impairment.

As a result, I recommend that Plaintiff's discrimination claim pursuant to the ADA be dismissed with leave to amend.[7] *See Churchill v. Oasis Outsourcing VI, Inc. Emp'r's Edge LLC*, 21-CV-5668, 2021 WL 4710510, at *4 (S.D.N.Y. Oct. 8, 2021) (dismissing the plaintiff's ADA claim for failure to state a claim upon which relief may be granted where he did not allege that he is disabled or perceived as disabled within the meaning of the ADA).

### 2. Retaliation

The ADA makes it unlawful for an employer to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). A retaliation case under the ADA requires "a showing that the employee was engaged in an activity protected by the ADA." *Gold v. Carus*, 131 F. App'x 748, 750 (2d Cir. 2005) (quotations and citation omitted).

To establish a prima facie case for retaliation under the ADA, a plaintiff must show that "(1) she engaged in protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 608 (2d Cir. 2006).

The Complaint alleges that on August 10, 2020, Plaintiff contacted Dali Guantes in human resources to report harassment regarding Plaintiff's gender identity and expression. (Dkt. No. 1 at ¶ 14.) In addition, Plaintiff alleges that on August 15, 2020, she sent a group text

---

[7] To the extent that the Court accepts this recommendation, Plaintiff is urged that her amended pleading must explain what her disability is and provide facts rendering it plausible that Defendants' treatment of her was based on her disability.

11

message to Defendants Monohan and Arnold regarding the discriminatory harassment surrounding Plaintiff's gender identity and expression "stating that the conduct was unwelcome and must stop." (Dkt. No. 1 at ¶ 20.) These alleged instances of protected activity pre-date any allegations in the Complaint regarding actions taken by Defendants related to Plaintiff's disability. (*Compare* Dkt. No. 1 at ¶¶ 14, 20, *with* Dkt. No. 1 at ¶ 21(a).) Thus, Plaintiff fails to allege facts plausibly suggesting that her protected activities were protected by the ADA. Instead, it appears that Plaintiff's alleged protected activities were complaints about general work place harassment and complaints with respect to her gender.

As a result, I recommend that Plaintiff's retaliation claim pursuant to the ADA be dismissed.

### B. Claims Pursuant to Title VII

"Title VII . . . prohibit[s] employers from retaliating against an employee because she has opposed an unlawful discrimination practice." *Zheng-Smith v. Nassau Health Care Corp.*, 20-3544-cv, 2021 WL 4097316, at *3 (2d Cir. Sept. 9, 2021) (citing 42 U.S.C. § 2000e-3(a)).

"To establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate that '(1) that [he] was engaged in protected activity; (2) that the employer was aware of that activity; (3) the employee suffered a materially adverse employment action; and (4) there was a causal connection between the protected activity and the adverse action.'" *Liu v. Indium Corp. of Am.*, 20-64, 2021 WL 3822871, at *2 (2d Cir. Aug. 27, 2021) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012)).

Out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to

dismiss or for summary judgment, I recommend that a response be required to Plaintiff's retaliation claim pursuant to Title VII against Defendant Rescue Mission.

      **C.**      **Constitutional Claims Pursuant to 42 U.S.C. § 1983**

"To state a valid claim under § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). Thus, § 1983 does not create any independent substantive right, but rather "provides a civil claim for damages" to "redress . . . the deprivation of [federal] rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).

There is no single test that is determinative of whether a private person or entity may be a state actor, but rather a host of factors. *Baum . N. Dutchess Hosp.*, 764 F. Supp. 2d 410, 428 (N.D.N.Y. 2011) (Treece, M.J.). A state actor may be found when: (1) "[the challenged activity] results from the State's exercise of coercive powers"; (2) "the State provides significant encouragement, either overt or covert . . . or when a private actor operates as a willful participant in joint activity with the State or its agents"; (3) "it is controlled by an agency of the State;" (4) "it has been delegated a public function by the State [known as the public function test]"; or (5) "it is entwined with governmental policies or when government is entwined in its management or control[.]" *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 296 (2001) (citations, quotation marks, and alterations omitted).[8]

---

[8]    On occasion, these criteria have been stated differently but the impact remains the same:

> The conduct of private actors can be attributed to the State for [§ 1983] purposes if (1) the State compelled the conduct, (2) there is a sufficiently close nexus between the State and the private conduct, or (3) the private

Drawing all reasonable inferences and construing the Complaint liberally, it fails to allege facts plausibly suggesting that the Rescue Mission Alliance of Syracuse or its employees are state actors for purposes of liability pursuant to 42 U.S.C. § 1983. *See Vazquez v. Astrue*, 18-CV-1492, 2020 WL 1313580, at *3 (N.D.N.Y. Feb. 12, 2020) (Baxter, M.J.) ("[Rescue Mission] employees do not act under color of state law for purposes of section 1983."); *Davis v. Capital City Rescue Mission*, 13-CV-1380, 2013 WL 6062325, at *2 (N.D.N.Y. Nov. 18, 2013) (Dancks, M.J.) ("[T]he Rescue Mission is not a state actor."); *Humphrey v. Rescue Mission*, 05-CV-0986, 2005 WL 2437031, at *2 (Sept. 30, 2005) (Scullin, C.J.) ("Plaintiff does not allege that the Rescue Mission is a state actor for purposes of § 1983, and he has not alleged any facts that would permit the Court to draw that inference. Therefore, the Court dismisses this action pursuant to 28 U.S.C. § 1915(e)(2)(B).").

As a result, I recommend that Plaintiff's claims pursuant to 42 U.S.C. § 1983, be dismissed for failure to state a claim.

## V.    OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."

---

conduct consisted of activity that has traditionally been the exclusive prerogative of the State.

*Hogan v. A.O. Fox Mem'l Hosp.,* 346 F. App'x 627, 629 (2d Cir. 2009) (citing *Sybalski v. Indep. Grp. Home Living Program, Inc.,* 546 F.3d 255, 257 (2d Cir. 2008)).

*Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[9]

This Court has serious doubts about whether Plaintiff can amend to assert actionable claims pursuant to the ADA and 42 U.S.C. § 1983. However, I am unable to conclude with complete certainty that if permitted leave to amend her complaint, Plaintiff could not assert plausible claims pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act. Accordingly, I recommend that leave to amend be granted.

If Plaintiff chooses to file an amended complaint, she should note that the law in this circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'" *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, Plaintiff must clearly set forth

---

[9] *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act.  In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations.  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court.  *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**ACCORDINGLY**, it is

**ORDERED** that the application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD** Plaintiff's claims pursuant to the ADA and 42 U.S.C. § 1983, for failure to state a claim pursuant to 28 U.S.C. 1915(e)(2)(B); and it is further respectfully

**RECOMMENDED** that the Court **ACCEPT FOR FILING** Plaintiff's claims pursuant to Title VII alleging retaliation against Defendant Rescue Mission Alliance of Syracuse; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[10]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[11]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: October 26, 2021
Binghamton, New York

*[signature]*
Miroslav Lovric
U.S. Magistrate Judge

---

[10]  The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[11]  If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).